

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

November 7, 1947.

Hon. C. H. Cavness
The State Auditor
Austin 11, Texas

Opinion No. V-427.

Re: The applicability of the
general provisions in the
current Departmental Appro-
priation Bill to the Texas
Employment Commission.

Dear Sir:

We refer to your letter of September 8,
1947, in which you request the opinion of this
department as to whether or not the Texas Employ-
ment Commission is now a State Department or Agency
to the extent that it and its employees come under
the laws which regulate generally other State Depart-
ments and the General Provisions of the current
Departmental Appropriation Act.

In order to fully comprehend the status of
the Texas Employment Commission and its relation to
the laws which generally regulate other State Depart-
ments and the General Provisions of the current Depart-
mental Appropriation Act, it is necessary to examine
the Federal Statutes as well as the State Statutes.
This is indispensable for the reason that the unemploy-
ment compensation acts adopted in the several States
were substantially contemporaneous and were adopted
pursuant to and in accord with the Federal Social
Security Act. All are designed to operate together
as a cooperative endeavor. Steward Mach. Co. v. Davis,
301 U. S. 548, 57 S. Ct. 883, 109 A. L. R. 1293; Car-
micheal v. Southern Coal & Coke Co., 301 U. S. 495,
57 S. Ct. 868, 109 A. L. R. 1327; 48 Am. Jur. p. 513.

The Texas Employment Commission is a State
Agency and its employees are State employees. It was
contemplated under this coordinated Federal and State
unemployment compensation system that the administra-
tion thereof would be handled through designated State
agencies. The Commission was designated by the Legis-
lature as the State Agency to administer this system
in Texas.

Under this coordinated Federal and State unemployment compensation system, the Federal Government uses the taxes that it collects to pay the costs of administering both the Federal and State plans and the amounts collected by the States are used solely in the payment of benefits to unemployed workers. This money used to defray administrative cost is sent to the several States by the Secretary of Treasury upon a certification from the Social Security Board. We quote from 42 U.S.C.A., Sec. 502, in part as follows:

"(a) The Board shall from time to time certify to the Secretary of the Treasury for payment to each State which has an unemployment compensation law approved by the Board under sections 1600-1611 of Title 26, <u>such amounts as the Board determines to be necessary for the proper and efficient administration of such law during the fiscal year for which such payment is to be made. . . .</u>" (Emphasis supplied)

Section 503 of Title 42 of U. S. C. A. provides:

"(a) The Board shall make no certification for payment to any state unless it finds that the law of such State, approved by the Board under Sections 1600-1611 of Title 26, includes provision for —

"(1) Such methods of administration (including after January 1, 1940, methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Board shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods) as are found by the Board to be reasonably calculated to insure full payment of unemployment compensation when due;

". . .

"(8) Effective July 1, 1941, the expenditure of all moneys received pursuant to section 502 of this title solely <u>for the purposes and in the amounts found necessary by the Board</u> for the proper and efficient administration of such State law. . . ." (Emphasis supplied)

The remaining provisions in the above quoted section provide that in the event the State Agency charged with the administration of the State Unemployment Compensation Law fails to carry out the requirements of the Board, the Board shall make no certification for payments to the recalcitrant State.

The applicable provisions of our State Law are found in Article 5221b, R. C. S.

Section 9 thereof contains the following provisions:

"(a) Duties and Powers of Commission: It shall be the duty of the Commission to administer this Act; and it shall have power and authority to adopt, amend, or rescind such rules and regulations, to employ such persons, make such expenditures, require such reports, make such investigations, and take such other action as it deem necessary or suitable to that end:

"...

"(i) State-Federal Cooperation: In the administration of this Act, the Commission shall cooperate to the fullest extent consistent with the provisions of this Act, with the Social Security Board, created by the Social Security Act, approved August 14, 1935, as amended; shall make reports, in such form and containing such information as the Social Security Board may from time to time require, and shall comply with such provisions as the Social Security Board may from time to time find necessary to assure the correctness and verification of such reports; and shall comply with the regulations prescribed by the Social Security Board governing the expenditure of such sums as may be allotted and paid to this State under Title III of the Social Security Act, (Title 42, Sub-chapter III, U.S.C.) for the purpose of assisting in the administration of this Act." (Emphasis added)

Section 11 of Article 5221b provides as follows:

"(a) Special Fund: There is hereby created in the State Treasury a special fund to be known as the Unemployment

Compensation Administration Fund.  All
moneys which are deposited or paid into
this fund are hereby appropriated and
made available to the Commission and
shall be continuously available to the
Commission for expenditure in accordance
with the provisions of this Act and shall
not lapse at any time or be transferred
to any other fund.  All moneys in this
fund which are received from the Federal
Government or any agency thereof shall
be expended solely for the purposes and
in the amounts found necessary by the
Social Security Board for the proper and
efficient administration of this Act.
The fund shall consist of all moneys
appropriated by this State, all moneys
received from the United States of America,
or any agency thereof, including the Social
Security Board. . . ." (Emphasis added)

The above quoted provisions reveal an
unmistakable intent on the part of Congress and the
Texas Legislature that all moneys received from the
Federal Government under Title III of the Social
Security Act can be expended only in the amounts
and in accordance with the standards of the Social
Security Administration and the rules and regula-
tions adopted by the Commission to meet such stand-
ards.

The Texas Employment Commission is also the
State Agency designated to administer the employment
service in cooperation with the Federal Government.
Article 5221b-10, R. C. S.  This service was taken
away from the States by executive order during World
War II, and was not returned to the States until
November 16, 1946.  The Federal Government likewise
furnishes the funds necessary to administer this
program.  These funds are authorized to be paid to
the States by the Secretary of Labor by certifying
to the Federal Security Administrator the amount to
be paid to the State and the Federal Security Adminis-
trator then certifies this amount to the Secretary of
Treasury in addition to the amount payable under Sec-
tion 502(a) of Title 42.  This money likewise however
must be expended according to the rules and standards
prescribed by the Federal Agency.  We quote from 29
U.S.C.A., Sec. 49h, as follows:

"Each State agency cooperating with
the United States Employment Service under
Sections 49-49c, 49d, 49e-49k of this title
shall make such reports concerning its oper-
ations and expenditures as shall be pres-
cribed by the Federal Security Administrator.
It shall be the duty of the Administrator to
ascertain whether the system of public employ-
ment offices maintained in each State is con-
ducted in accordance with the rules and regu-
lations and the standards of efficiency pres-
cribed by the Administrator in accordance
with the provisions of said sections. The
administrator may revoke any existing cer-
tificates or withhold any further certificate
provided for in section 49f of this title,
whenever he shall determine, as to any State,
that the cooperating State agency has not
properly expended the moneys paid to it or
the moneys herein required to be appropriated
by such State, in accordance with plans ap-
proved under said sections. . . ." (Emphasis
added)

The States are still operating under the
Wagner-Peyser Act of 1933 which requires the submis-
sion of a detailed plan of operation by each State
and the strict adherence to such plan as well as to
the rules and regulations promulgated by the Director
of the United States Employment Service and the Secre-
tary of Labor. It will be noted that the United States
Employment Service issues statements of policy which
must be adhered to by the States.

It follows that the moneys allotted to the
State for employment service purposes by the Federal
Government can be expended by the State only in accord-
ance with the plans approved under these sections.

Under these cooperative endeavors the several
Federal Agencies give to the State the standards for the
State to follow in formulating the rules and regulations
relative to various systems. After the State has pre-
pared its rules and regulations, these are submitted to
the Federal Agencies for approval, and once they are
approved they cannot be altered or changed without first
securing the approval of the Federal Agencies.

These approved plans, as they are called, are very detailed and cover every phase of the administration of the acts and the expenditures that are made in connection therewith. To demonstrate, we refer to the personnel of the Commission. The recruiting of its employees is done through a merit system, which system must be operated according to the standards prescribed by the Federal Agencies. Each employee must come within a certain classification designated under a comprehensive classification plan which prescribes the title of each employee, a description of the duties and responsibilities, the minimum requirements of training, experience, education and other qualifications. Each employee is paid according to a comprehensive compensation plan which includes salary schedules for the various classes of employees, and it is definitely provided that no employee can be paid a salary unless it conforms to the plan and is at one of the salary levels established for the class.

The Legislature of Texas has recognized the necessity of extensive cooperation with the Federal Agency as is shown by the previously quoted statutes and the following quotation from the Departmental Appropriation Bill:

"All moneys granted to this State by the Federal Government for the administration of the Unemployment Compensation Act are hereby appropriated to be expended for purposes for which such moneys were granted. Notwithstanding any other provisions of this Act, moneys granted for travel shall be expended in the amounts and in accordance with the standards of the Social Security Administration and the United States Employment Service of the Department of Labor and the rules and regulations adopted by the Unemployment Compensation Commission to meet such standards. Out of state travel expense paid solely from Federal grants and made in accordance with the Federal standards as being necessary for proper administration of the Unemployment Compensation Act shall not require approval by the Attorney General.

"Salaries of the employees of the Unemployment Compensation Commission and members of the Commission shall be paid in accordance with agreements made between the Commission and the Social Security Administration and the United States Employment Service of the Department of Labor, but in no case shall such salaries be less than those authorized by the Act creating the Unemployment Compensation Commission.

"It is specifically provided that all moneys now on deposit to the credit of the Unemployment Compensation Fund, and all moneys received for the credit of such fund, are hereby appropriated for the payment of benefits and refunds as authorized by the provisions of the Unemployment Compensation Law." Vol. 6, Vernon's Texas Session Laws, 50th Legis., 1947, p. 930.

The reason the Legislature has acted in the manner above set forth becomes apparent when we realize that all of the funds used in the administration of these systems are furnished by the Federal Government and none are furnished by the State. Under the Federal enactments, the Federal Government will continue to furnish such funds only as long as the Commission complies with the rules and regulations of the Federal Security Administrator with regard to the expenditure of the moneys so furnished.

The paragraph in the Departmental Appropriation Act, page 930, which reads:

"All the above items appropriated for administration to the Texas Unemployment Compensation Commission shall be subject to the approval of the Legislative Audit Committee and none of the funds herein provided shall be spent until such approval shall have been obtained,"

does not change the policy of having the funds supplied by the Federal Government to be expended in accordance with the standards prescribed by the Federal Agencies. This provision applies insofar as it is not in conflict with the general provisions of the Texas Unemployment Compensation Act and the standards and regulations approved by the Federal Agencies.

As has been previously noted, the employment service was taken over by the Federal Government during World War II under Executive Order. This service was returned to the States effective November 16, 1946, and the administration of the service will continue to be financed solely by Federal Funds at least up to July 1, 1948. As a precautionary measure, the Legislature of Texas appropriated out of the General Fund certain items to be used to match between five and ten per cent of the Federal Funds used in the administration of the employment service in the event Congress requires such a matching program subsequent to July 1, 1948. These items are regulated by the general laws of Texas and have been so recognized, as is evidenced by an Attorney General's opinion addressed to the Board of Control, dated July 13, 1937.

In view of the foregoing it is our opinion that although the Texas Employment Commission is a State Agency and its employees are State employees, yet with respect to Federal Funds expended they are primarily governed by the standards prescribed by the Social Security Administrator and the United States Employment Service of the Department of Labor and the rules and regulations adopted by the Commission to meet such standards. Otherwise the general provisions of the laws of this State are applicable.

## SUMMARY

The Texas Employment Commission is a State Agency and its employees are State employees. However, Federal Funds expended for administration of the agency are primarily governed by the standards prescribed by the Social Security Administrator and the United States Employment Service of the Department of Labor and the rules and regulations adopted by the Commission to meet such standards. Otherwise, the general provisions of the laws of this State are applicable. 29 U.S.C.A., Sec. 29h; 42 U.S.C.A., Sections 502, 502(a); Article 5221b-Sections 9(a), 9(1), 10 and 11, R. C. S.

Very truly yours

APPROVED

ATTORNEY GENERAL

ATTORNEY GENERAL OF TEXAS

By

Robert O. Koch
Assistant

ROK:amm